Filed 7/5/22 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| THE PEOPLE, | D078819 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SCD272661, SCD264352) |
| JAMES EVAN BUNAS, | |
| | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on June 14, 2022, be modified as follows:

On page 34, delete footnote 25.

There is no change in the judgment.

The petition for rehearing is denied.


McCONNELL, P. J.


Copies to: All parties

Filed 6/14/22 (unmodified opinion)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES EVAN BUNAS,<br><br>    Defendant and Appellant. | D078819<br><br><br>(Super. Ct. Nos. SCD272661,<br>SCD264352) |

APPEAL from an order of the Superior Court of San Diego County, Polly H. Shamoon, Judge. Affirmed in part; reversed in part and remanded.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Marvin E. Mizell and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

# INTRODUCTION

In a prior opinion in this matter involving defendant James Evan Bunas,[1] we conditionally reversed the judgment and the underlying convictions[2] and remanded the matter to the trial court with directions to conduct a mental health diversion eligibility hearing under Penal Code section 1001.36[3] and to determine whether to place Bunas in mental health diversion. (*Bunas I.*) We further directed that, if the trial court determined that Bunas was ineligible for diversion or exercised its discretion not to place Bunas on diversion, then the court was to reinstate Bunas's convictions and resentence him. We explained that, in this instance, the court was "to allow for a full resentencing," due to the court's "misimpression about a material fact concerning Bunas's aggregate sentence," in its sentencing of Bunas in the two cases before it. (*Bunas I.*)

On remand, the trial court denied Bunas's request for mental health diversion. The court did not resentence Bunas.

---

[1] On our own motion, we take judicial notice of our prior opinion in this matter, *People v. Bunas* (Apr. 14, 2020, D075234) [nonpub. opn.] (*Bunas I*) and the record in *Bunas I*. (See Evid. Code, §§ 459 ["The reviewing court may take judicial notice of any matter specified in [Evidence Code] [s]ection 452"], 452, subd. (d) [permitting a court to take judicial notice of the "[r]ecords of (1) any court of this state"].)

[2] In our prior opinion, we explained that in using the term "convictions," we intended to refer to Bunas's plea of guilty to certain charges and his admissions to certain enhancement, strike, and serious felony allegations. (*Bunas I, supra*, fn. 3.)

[3] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

2

Bunas raises two claims in this appeal. First, Bunas contends that the trial court abused its discretion in denying his motion for mental health diversion. Bunas maintains that the court abused its discretion by: (1) "refusing to hold a hearing" to determine his *eligibility* for diversion; (2) determining that he was *unsuitable* for diversion based "solely on the offense"; and (3) failing to hold an *evidentiary* hearing on his motion for diversion.[4] In presenting the first of these arguments, Bunas contends that the court erred in relying on general objectives of sentencing in concluding that the "goals of punishment and deterrence outweighed the 'needs of the defendant,' " in denying diversion.

Second, Bunas contends that the trial court erred in failing to resentence him in accordance with this court's prior decision.

We conclude that the trial court did not commit reversible error in denying Bunas mental health diversion. As we explain, although we reject Bunas's three distinctly raised claims of error, we agree with Bunas that the court erred in relying on "objectives of sentencing" in ruling on his motion for diversion. However, we conclude that this error does not warrant reversal of the trial court's denial of Bunas's motion for diversion.

We further conclude that in failing to resentence Bunas, the trial court committed reversible error. Accordingly, we affirm the order denying

---

[4] These claims are distinctly raised in separately captioned arguments in Bunas's brief, as is required under our Rules of Court. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [a brief in a civil appeal must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"]; Cal. Rules of Court, rule 8.360 ["briefs in criminal appeals must comply as nearly as possible with rule[ ] . . . 8.204"].)

diversion, and remand once again for resentencing in accordance with the principles outlined in our prior opinion.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[5]

A. *Procedural background*

1. *Proceedings prior to our opinion in* Bunas I

In SCD272661, Bunas pled guilty to corporal injury of a spouse (§ 273.5, subd. (a)), making a criminal threat (§ 422), and felony child abuse (§ 273a, subd. (a)). With respect to the corporal injury offense, Bunas admitted personally using a deadly or dangerous weapon (§ 12022, subd. (b)(1)) and inflicting great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). Bunas also admitted, with respect to the criminal threat offense, that he used a deadly weapon (§ 1192.7, subd. (c)(23)). Finally, Bunas admitted having suffered a strike prior (§§ 667, subds. (b)–(i), 1170.12) and a serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)).

In June 2018, the trial court sentenced Bunas to 15 years and 4 months in SCD272661. In addition, because Bunas had been on probation in a separate case (SCD264352) at the time of his commission of the offenses in SCD272661, the court revoked probation in SCD264352 and imposed a sentence of 20 months in prison in that case, to be served consecutively to the sentence imposed in SCD272661, for a total aggregate sentence of 17 years.

In November 2018, the trial court recalled the case for resentencing.[6] At resentencing, the court imposed an aggregate sentence of 15 years and

---

[5]     Parts II.A.1, II.A.2 and II.B are drawn from *Bunas I.*

4

8 months in this case, SCD272661. With respect to SCD264352, the court stated, "It was a concurrent. It's not consecutive, and it doesn't have to be touched at all because it didn't add anything to this sentence."

2. *Our opinion in* Bunas I

In *Bunas I*, Bunas requested that the matter be remanded for a hearing to allow the trial court to exercise its discretion to grant mental health diversion (§ 1001.36), in light of a change in the law. Bunas also argued that, in any event, he was entitled to a new sentencing hearing, given the lack of clarity in the record with respect to the total aggregate sentence that the court intended to impose in the two cases.

We agreed with both of Bunas's contentions. Accordingly, our disposition stated in relevant part:

> "The judgment and the convictions are conditionally reversed. The matter is remanded to the trial court with directions to conduct a mental health diversion eligibility hearing under section 1001.36. If the court determines that Bunas qualifies for diversion, then the court may grant diversion. If Bunas successfully completes diversion, then the court shall dismiss the charges against him.
>
> "If the court determines that Bunas is ineligible for diversion or determines that Bunas is eligible for diversion but exercises its discretion to not place Bunas on diversion, or if the court places Bunas on diversion but he fails to successfully complete diversion, then the court shall reinstate Bunas's convictions. The court shall thereafter resentence Bunas in a manner consistent with our discussion in part III.B, *ante.*" (*Bunas I.*)

---

6    As noted in *Bunas I* that "[t]he record indicates that the trial court recalled the case for resentencing pursuant to a request from the Department of Corrections and Rehabilitation."

5

Our discussion in part III.B of *Bunas I*, explained that "in the event that the trial court does not grant [Bunas] mental health diversion or the court grants diversion, but he fails to successfully complete it, a remand *for a full resentencing is appropriate under the circumstances of this case*," (italics added) and we described those circumstances in detail.

3. *Proceedings on remand*

As discussed in greater detail in part III.A.3, *post*, on remand, Bunas filed a motion requesting that the trial court grant him mental health diversion pursuant to section 1001.36. Together with his motion, Bunas lodged a December 2017 psychological evaluation of him prepared by Dr. Clark Clipson. In addition, Bunas lodged a July 5, 2017 document drafted by a detective who investigated the charged offenses, which summarized a statement made by Bunas's sister.

The People filed an opposition to the motion. With their opposition, the People lodged the probation report from SCD264352. The People also lodged a February 2016 psychological evaluation of Bunas prepared by Dr. Greg Michel in connection with SCD264352.

The trial court held a videoconference hearing on Bunas's motion on March 16, 2021. At the outset of the hearing, Bunas's counsel requested that the hearing be continued so that Bunas could attend the hearing in person when the prison in which he was incarcerated resumed transporting inmates for such proceedings. The trial court orally denied both the request for a continuance and the motion for diversion.

The trial court entered a minute order that same day denying Bunas's request for a continuance and his motion for diversion.

6

### 4. *This appeal*

Bunas timely appealed from the trial court's March 16, 2021 order.[7]

### B. *Factual background*[8]

Bunas inflicted corporal injury that could have resulted in a traumatic condition to the victim, who was his domestic partner. During his infliction of this injury, Bunas personally used a dangerous and deadly weapon, i.e., a knife, and personally inflicted great bodily injury. Bunas also threatened the victim in a way that caused her sustained fear, and he intended to instill fear in the victim. In addition, Bunas put a child who was in his custody in harm's way. Bunas also previously suffered a conviction that was both a serious felony prior and a strike prior.

III.

DISCUSSION

### A. *The trial court did not commit reversible error in denying Bunas's motion for diversion*

Bunas claims that the trial court abused its discretion in denying his motion for diversion.

---

[7] As explained in footnote 21, *post*, while this appeal was pending, Bunas filed a petition for habeas corpus in which he contended that, in the event this court determined that he forfeited his request for an evidentiary hearing on his motion for diversion, his trial counsel provided ineffective assistance in failing to expressly request such a hearing.

[8] In *Bunas I*, we explained that in light of Bunas's guilty plea in SCD272661, there was no trial and our factual background was drawn from the plea colloquy. In part III.A.3.a–b, *post*, we provide additional factual background with respect to evidence as to the circumstances of the charged offenses, as well as Bunas's commission of prior offenses, which was presented to the trial court on remand in connection with Bunas's motion for mental health diversion.

7

1. *Standard of review*

In *People v. Moine* (2021) 62 Cal.App.5th 440, the Court of Appeal concluded that the abuse of discretion standard of review applies "on appeal from a trial court's denial of mental health diversion." (*Id.* at p. 448.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]." (*Id.* at p. 449.)

2. *Governing law*

In *People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*), the Supreme Court provided an overview of the mental health diversion statute:

> "Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . .' (§ 1001.36, subd. (c).) The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)" (*Id.* at p. 626.)

The *Frahs* court outlined various "threshold eligibility requirements," (*Frahs, supra*, 9 Cal.5th at p. 627) that a defendant must satisfy before a trial court may grant mental health diversion:

8

"As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)–(6).) Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017–2018 Reg. Sess.) (Senate Bill 215) to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)" (*Id.* at pp. 626–627.)

The *Frahs* court explained further, "If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).)" (*Frahs, supra*, 9 Cal.5th at p. 627.)

The *Frahs* court also outlined several key features of the statutory diversion scheme:

"The maximum period of diversion is two years. (*Id.*, subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the

9

arrest upon which the diversion was based shall be deemed never to have occurred.' (*Id.*, subd. (e).)" (*Frahs, supra*, 9 Cal.5th at p. 627.)

3. *Factual and procedural background*

a. *Bunas's motion for mental health diversion*

On remand from *Bunas I,* Bunas filed a motion for mental health diversion pursuant to section 1001.36. In his motion, Bunas outlined the facts of the current offense as described in the probation report. Bunas explained that on the day of the incident giving rise to the charged offenses, he had been at a wedding with his girlfriend. While at the wedding, Bunas's girlfriend spoke with a male friend of hers who is an attorney and who had represented her during a previous custody dispute with Bunas. Bunas "felt disrespected," and he punched the attorney in the face.

Later that evening, Bunas returned to the residence where he lived with his girlfriend and his two children.[9] According to Bunas, the following then occurred:

> "While [Bunas's girlfriend] was on the toilet, Mr. Bunas entered the bathroom and began hitting her in the head with a large flashlight. [Bunas's girlfriend] fell off the toilet into the bathtub. [Bunas] accused her of ruining his life and said he wanted to kill her before walking out of the bathroom. [Bunas] then threw the flat screen [television] in the bedroom on the floor and broke it.
>
> "Fearing Mr. Bunas would return, [Bunas's girlfriend] went into [their] son's bedroom with [their son]. Mr. Bunas came

_____

[9]    Although Bunas's motion referenced only one of the two children, the probation report indicates that, at the time of the charged offense, Bunas lived with his girlfriend, their biological child, and Bunas's son from a previous relationship. Both children, who were ages 9 and 13 at the time of the offense, were at home during the incident.

in the room and began yelling at her and hitting her with the flashlight again. [Bunas] grabbed her by the hair and began to drag her out of the bedroom as [their son] began to scream, 'Please don't kill mommy.' Mr. Bunas let [his girlfriend] go and left the room. [Bunas's girlfriend] then heard the defendant start his motorcycle and leave. Assuming he was gone for the night, she took [their son] back to her bedroom to sleep.

"While in bed, [Bunas's girlfriend] got a call from [Bunas's sister], who said she called after she received a call from her brother. Mr. Bunas had told his sister that he had just killed [his girlfriend]. Mr. Bunas['s] sister reported that she felt Mr. Bunas had 'snapped' and that he was talking nonsense. While they were on the phone, Mr. Bunas came in the room holding a large knife or machete. Mr. Bunas took the phone from [his girlfriend] and threw it, then proceeded to strike her in the head with the knife while yelling, 'I'm going to kill you, you fucking bitch, you ruined my life.' He then stopped and fled on foot. [Bunas's girlfriend] then called the police. [Their nine-year-old son] witnessed the entire incident. When police arrived, [Bunas's girlfriend] was taken to the hospital for treatment of several large cuts to her ear and head."

Bunas argued that the trial court should grant him diversion because he suffered from a mental disorder that was "the paramount factor to his conduct in the instant offense."

Specifically, Bunas briefly[10] argued that he satisfied each of the elements of the statutory eligibility factors outlined in section 1001.36, subdivision (b). Bunas stated that he suffered from several mental disorders including "major depressive disorder, post-traumatic stress-disorder, [and] alcohol and opioid use disorder," and that his mental disorders were a

_____

10   Bunas's analysis of the eligibility factors was approximately one and a half pages in length.

11

significant factor in his criminal conduct. In particular, Bunas argued that his "exposure to violence and abuse," led to his mental disorders and culminated in his actions on the day of the charged offenses. He argued further that his mental disorders would respond to treatment, and stated that he would consent to diversion and comply with all terms and conditions of any treatment providers. Finally, Bunas contended that he did not pose a risk to public safety "as defined by . . . section 1170.18."[11] He argued:

> "[S]ection 1170.18 defines an unreasonable risk of danger to public safety as an unreasonable risk that, in this case, Mr. Bunas will commit a new super strike as defined in the [P]enal [C]ode. While Mr. Bunas does have a criminal history that includes crimes of violence, he has never been convicted of a violent strike offense pursuant to [P]enal [C]ode section 667.5.[[12]] Moreover, Dr. Clipson opines in his psychological report that Mr. Bunas['s] mental health disorders were significant factors in his only violent convictions, cases SCD272661(the instant case) and SCD264352 (probation case). Therefore any chance of violent conduct is tied to Mr. Bunas['s] treatment of his mental health disorders, which he is committed to [sic][.] This shows Mr. Bunas does not pose an unreasonable risk of committing a new super strike and does not pose an unreasonable risk of danger to public safety."

With his motion, Bunas lodged Dr. Clipson's December 2017 psychological evaluation. In his evaluation, Dr. Clipson summarized Bunas's

---

11    Pursuant to section 1001.36, subdivision (b)(1)(F) and its incorporation of section 1170.18's definition of unreasonable risk of danger to public safety, in order to make a finding of dangerousness, a trial court must find that the defendant is likely to commit an offense defined in section 667, subd. (e)(2)(C), known colloquially as a " 'super strike.' "

12    While Bunas cited section 667.5, it appears likely that the intended citation was section 667, subdivision (e)(2)(C), which, as noted in footnote 11, *ante*, defines offenses colloquially known as "super strikes."

12

family history, as recounted by Bunas. Dr. Clipson stated that this history included "emotional and physical abuse, as well as exposure to domestic violence between his parents." Dr. Clipson also stated that Bunas admitted "a history of domestic violence in his relationships." Dr. Clipson noted that Bunas's criminal record included convictions for grand theft, driving under the influence, and shooting at an inhabited vehicle. Dr. Clipson further recounted that Bunas acknowledged having had a "[h]istory of dependency," with respect to alcohol. In addition, Dr. Clipson stated that Bunas had been "[d]ependent," on "[p]ain pills," and that he had last used such pills in 2014.

Dr. Clipson also reviewed a 2016 psychological evaluation of Bunas drafted by Dr. Michel,[13] as well as various statements from Bunas's family members, records pertaining to the charged offense, and psychiatric records from the jail. In addition, Dr. Clipson conducted an interview of Bunas, administered a mental status examination, and performed various psychological tests.

Dr. Clipson offered the following summary and conclusions:

> "Mr. Bunas is a 44 year--old man who has experienced an unusually high number of advers[e] childhood events. His self--report in this regard is supported by statements by his sister as well as by statements made by a brother before this brother died. As someone who was physically and psychologically abused, who grew up in a home in which his father and older brother were molesting his sisters, and in which there was domestic violence, substance abuse and mental illness in his parents, [Bunas] was unable to experience anything near normal psychosocial development. He developed symptoms of depression and complex posttraumatic stress which interfered with his ability to form meaningful relationships, cope effectively

___

[13] As noted in part II.A.3, *ante*, the People lodged Dr. Michel's evaluation with their opposition. We discuss Dr. Michel's evaluation in part III.A.3.b, *post*.

with stress, or form and reach life goals. He became dependent on alcohol and pain medication as a way of coping with negative thoughts and feelings, but his abuse of these substances caused further problems in his social and occupational functioning. He has attempted sobriety, but has never adequately addressed his psychiatric difficulties other than by taking medication.

"[Bunas's] behavior during the instant offense is similar to that from a prior offense in 2016. In both instances, his anger was triggered by feelings of shame, and he responded by becoming intoxicated on alcohol and acting out in a violent manner. In both instances, he said he wanted to kill the object of his anger, but inflicted relatively minor wounds despite having the means to cause severe injury or death. He grew up in a home plagued by domestic violence in which his father would sometimes say he wanted to kill his mother. It is quite likely that this statement reflects more of an expression of anger than an actual desire to take someone else's life, particularly since his behavior during both offenses reflects the release of anger more than an earnest attempt to kill someone.

"It is also noteworthy than in both instances, Mr. Bunas was taking Prozac. Prozac is an SSRI anti-depressant medication that can cause symptoms of manic-like behavior in some individuals who take this medication. Given the apparent fact that he has committed impulsive, violent acts that resulted in his arrest only twice, and both times he was taking Prozac, it is possible that his behavior was caused, at least in part, by his use of this substance. This would have to be substantiated by a psychiatrist, however, as this lies outside my area of expertise as a psychologist."

In addition to Dr. Clipson's report, Bunas lodged a detective's summary of a statement given by Bunas's sister. In the statement, Bunas's sister provided some background information pertaining to Bunas's relationship with his girlfriend. The detective stated that Bunas's sister had described

14

the relationship as "toxic and codependent." In addition, Bunas's sister provided a description of her knowledge of the events surrounding the charged offense.

### b. *The People's opposition*

The People filed an opposition to Bunas's motion in which they described the charged offenses,[14] evidence of Bunas's commission of various offenses in SCD264352, his criminal history, and his mental health history.

With respect to the section 1001.36 eligibility factors, the People maintained that Bunas's mental health disorder had not played a significant role in the offenses, arguing that the "[d]efense has not provided any documentation from a mental health professional or other credible source that [Bunas] was experiencing symptoms or episodes at the time of the offenses." The People also maintained that Bunas had not demonstrated how mental health treatment would affect the symptoms that contributed to his commission of the crimes.

The People further maintained that Bunas presented an unreasonable risk of danger to the public if treated in the community. They argued in part as follows:

> "Here, [Bunas] clearly poses a significant risk to the community. [Bunas] was on probation for a violent offense when he punched his girlfriend's friend in the face and when he attacked his girlfriend several times, threatened to kill her and ultimately tried to kill her with a machete. Attempted murder is one of the enumerated offenses that

---

14 As noted in part II.A.1, *ante*, these offenses included the infliction of corporal injury on a spouse (§ 273.5, subd. (a)) with the use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)) and infliction of great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)).

The People's opposition contained photographs of Bunas's girlfriend depicting the injuries that she suffered in the attack in this case, including numerous stitches to the top of her head.

would qualify as a 'super strike.'[ ] Based on the facts of the current case, coupled with his recent history of violence, this court has grounds to and should find that [Bunas] presents a danger to the community as contemplated by this statute and should thus be denied diversion."

With their opposition, the People lodged the probation report from SCD264352. The probation report described the circumstances leading to the offense to which Bunas pled guilty—shooting at an inhabited vehicle, (§ 246) in part as follows:

"On 08/29/15, an SDPD officer responded . . . to investigate a report of someone shooting into an unoccupied vehicle and vandalizing property. [D.B.] stated he lived with family and roommate [J.U.] [S.B.] stated he parked his van in front of the residence and a bullet hole was discovered in the driver's side door of the van the following day. He also noticed a message scribbled with a sharp object which read, 'Keep taking and you be next [*sic*].' The front tires and rear tires were flat, two tires on [S.B.'s] truck were flat . . . ."

The probation report also provided a description of various counts that had been dismissed in the case that included the following:

"On 10/02/15, [S.B.] and [J.U.] were outside on their patio when James Bunas showed up unannounced. Bunas walked up to [S.B.] holding a knife in one hand and a gun in the other. Bunas yelled at [S.B.], 'You were talking shit on my children, I will kill you!' Bunas pressed the gun against [S.B.'s] head and slashed his right ring finger with the knife. Bunas produced a metal baton and struck [S.B.] on the left arm. Bunas struck [J.U.] in the head with the baton before he fled. [S.B.] sustained lacerations to his fingers and forearm and [J.U.] sustained a large laceration to his forehead."

The probation report added that J.U. stated that he had known Bunas since high school and that J.U. saw that Bunas "had guns, an AK-47 and

16

body armor." In addition, while J.U. "never saw Bunas being violent towards anyone, [Bunas] appeared [to J.U. to be] paranoid from drug use."

The People also lodged Dr. Michel's 2016 psychological evaluation of Bunas. In his evaluation, Dr. Michel discussed many of the same issues as were outlined in Dr. Clipson's evaluation, including Bunas's abusive childhood as well as his criminal history and substance abuse problems. With respect to several of the charged offenses that were dismissed in SCD264352, the evaluation stated in part:

> "Mr. Bunas admitted he had confronted the victims but that many of the details as contained in the record . . . were not correct. He said he was never in possession of a gun, a pipe or a stick noting he had a knife in his pocket with the handle resembling brass knuckles in his pocket that he produced during a verbal altercation with the victims. He said that one of the victims tried to hit him and he put up his hand while holding a knife for protection resulting in one of the victims receiving a cut on his finger. [Bunas] did not explain how the victim received a laceration to his forehead or injury to his leg."

The evaluation also stated, "Mr. Bunas candidly stated he had victimized the vehicle" forming the basis of Bunas's conviction for shooting at inhabited vehicle in SCD264352. However, the evaluation noted that Bunas had not discussed "using a firearm."

In a section of the report titled, "Summary and Recommendations," Dr. Michel stated, "It is of obvious concern that [Bunas's] pent-up and repressed feelings and affective state led to a combination of affective and predatory behavior escalating from property damage to verbal confrontation to physical assault."

17

c. *The March 16, 2021 hearing on the motion for diversion*

The trial court held a hearing on Bunas's motion for diversion on March 16, 2021 at which the prosecutor, defense counsel and Bunas appeared by videoconference.  At the outset of the hearing, defense counsel moved to continue the hearing so that Bunas could be "physically present, in court." Defense counsel explained that the prison at which Bunas was incarcerated was "not transporting people currently [to court] . . . [but] I think that's going to change fairly soon."

The trial court stated that it would take a short recess before ruling on the continuance request, adding, "it took some doing to get us all here."

When the court returned from the recess, after confirming that all of the participants were present at the videoconference, the court stated the following:

> "Okay.  Mr. [defense counsel] has just made a motion that this continue until Mr. Bunas can be transferred from state prison and be brought down to San Diego.  We have no idea when those transfers will be made, how long that will take, what's involved in that.  But the court, based on what I'm intending to do today, does not feel like it is efficient or in anybody's best interest to do that.  The court feels that it would be a waste of time and resources given that the court is not holding a full hearing in this matter.

> "So[,] what the court has done is -- in anticipation, and once I received this case, the court received the following mental health diversion request on behalf of Mr. Bunas pursuant to penal code section 1001.36.  I have reviewed the moving papers, the response, all of the attachments, and the original probation report."

After defense counsel objected and again requested a continuance to permit Bunas to be physically present, the court stated:

18

"Mr. [defense counsel], if the court was going to hold a hearing, I agree with you. I would think that it would be in his best interest if he wanted to be here physically for the hearing, and you would then be physically available in the courtroom with him with your witnesses. But the court is not going to hold a hearing. I am denying the motion based on the moving papers."

Defense counsel responded, "Oh, okay. My apologies."

The court then stated the following:

"And so what the court is finding, so I'm clear with all the parties, is I have reviewed all of the materials, I have reviewed all of the attachments, and I have reviewed the probation report. . . . [S]ection 1001.36 indicates that there is a potential for diversion if the defendant meets the eligibility requirements and the offense is suitable for diversion. What the court is saying is even if the mental illness was a significant factor in the charged offense, and I am not indicating it was, I'm not making a finding that it was, especially given the other motives that he had in this case, but assuming that even if the court found all of the requirements, including that the mental illness was a significant factor in the charged crimes, this court would nonetheless exercise its discretion to conclude that the charged offenses, though not statutorily disqualified, are not suitable for diversion."

The court added:

"The general objectives of sentencing[ ] stated in California Rule[s] of Court[, rule] 4.410 reflect the various and sometimes conflicting goals of our criminal justice system. Although mental health diversion might satisfy the objectives of encouraging the defendant to lead a law-abiding life and deterring him from future offenses, an assault, an unprovoked assault, on one victim, and a later attack on another victim with first a flashlight and then a machete where he splits open her head, again, unprovoked, threatening her all the while to kill her for ruining his life, and all in front of her children who are pleading for the

19

man, the defendant, not to kill their mother, involves a use of force and fear on members of the public that justifies placing the goals of punishment and [deterrence] of others by demonstrating the consequences of such criminal behavior above the needs of the defendant's, and for those reasons the defendant's motion for mental health diversion is denied."

Defense counsel again stated that he was objecting to the hearing being held without Bunas being physically present in court, and the trial court reaffirmed its rulings denying the request to continue and the motion for diversion. The court then asked whether either the prosecutor or defense counsel wanted to say anything further. As discussed in part III.A.4.c, *post*, defense counsel stated that his client's presence was "the main issue." Counsel did not raise any other issues.

4. *Application*

Bunas raises three arguments in support of his claim that the trial court abused its discretion in denying his motion for diversion. We consider each argument in turn.

    a.   *The trial court did not err in purportedly failing to hold an eligibility hearing*

Bunas contends that the trial court erred by "refusing to hold a hearing to determine [his] eligibility for diversion." (Boldface omitted.)

To begin with, we note that it is undisputed that the trial court held a hearing on March 16, 2021 on Bunas's motion for diversion at which defense counsel, Bunas, and the prosecutor appeared by way of videoconference. During the hearing, the trial court stated that it had "reviewed the moving papers, the response, all of the attachments, and the original probation report." Further, the trial court rendered a ruling on the motion at the hearing and entered a minute order denying the motion.

20

Notwithstanding that the trial court undisputedly held a hearing at which it denied Bunas's motion for diversion, Bunas offers several arguments in support of his claim that the trial court failed to hold an eligibility hearing. None entitles him to reversal. First, Bunas argues that the "trial court flatly refused to hold an eligibility hearing." (Emphasis omitted.) It is true that, on several occasions during the hearing on Bunas's motion, the trial court stated that it would not be holding a "hearing." Specifically, the court made the following statements at the March 16, 2021 hearing:

> "The court feels that it would be a waste of time and resources [to wait until Bunas could be transported to court] given that the court is not holding a full hearing in this matter."

> "[I]f the court was going to hold a hearing, I agree with you [defense counsel, that Bunas should be present in court]. I would think that it would be in his best interest if he wanted to be here physically for the hearing, and you would then be physically available in the courtroom with him with your witnesses. But the court is not going to hold a hearing."

> "And so given that the court is not holding a full hearing because the court is finding that the offense is not suitable for diversion, it does not appear to be in anybody's best interest, and it seems to be an unnecessary use of court time and resources to bring [Bunas] down to hear what the court just indicated for the record. There will not be a hearing based on the court's finding of this unsuitability of diversion based on the offense itself."

However, when considered in context, it is clear that in making these statements, the court intended to indicate that it would not hold an *evidentiary* hearing on Bunas's motion. With respect to two of the statements, the trial court stated that it would not hold "a *full* hearing," (italics added) and with respect to the third statement, the court referred to a

21

hearing at which "witnesses" would be present. Thus, we interpret each of the trial court's statements quoted above as reflecting the trial court's ruling that it would not hold an *evidentiary* hearing on Bunas's motion for diversion.[15] Accordingly, the court's statements that it would not be holding a "hearing" do not provide a basis for reversal.

Bunas also argues that the trial court erred by ruling on his motion for diversion "without even allowing argument by counsel." While the trial court could have been more solicitous in determining counsels' desire to present argument, defense counsel appeared by videoconference at the hearing and could have requested the opportunity to present argument on the merits of the motion if he had desired to do so. Indeed, while defense counsel repeatedly moved to continue the hearing and raised his objection that Bunas be allowed to be present in court *four times* during the hearing, defense counsel *never* requested the opportunity to present argument on the merits of the motion. Under these circumstances, the trial court could have reasonably concluded that defense counsel sought only to continue the hearing in order to permit Bunas to be present in court and that defense counsel was willing to submit on his moving papers with respect to the merits of the motion.[16] This conclusion is supported by the following colloquy from the end of March 16, 2021 hearing:

---

[15] In part III.A.4.c, *post*, we consider Bunas's contention that the trial court erred in denying his motion without conducting an evidentiary hearing.

[16] Bunas does not contend in either this appeal or in his petition for habeas corpus that defense counsel provided ineffective assistance in failing to present argument at the March 16, 2021 hearing.

"[The court]: Okay. Anything from the people?

"[The prosecutor]: No, your honor. I'd submit.

"[The court]: Okay. Anything further, [defense counsel]?

"[Defense counsel]: I mean, the court stated it wouldn't be in anybody's best interest other than my client's right to be there personally present. So, I mean, that's the main issue I have here."[17]

Finally, in his reply brief, Bunas contends that the trial court erred in determining that the charged offenses were not suitable for mental health diversion, without first determining his *eligibility* for diversion. While Bunas does not dispute that a trial court may deny a request for mental health diversion on the ground that a defendant or offense is *unsuitable* for diversion even if the defendant is *eligible* for diversion, he argues that the trial court was "required to determine [his] eligibility for diversion *before* it considered his suitability for diversion." (Italics added.) Yet, he points to nothing in the text of the statute that required the trial court to determine eligibility *prior* to determining suitability. Section 1001.36, subdivision (b)(3) provides that "[a]t any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion *and that the defendant and the offense are suitable for diversion.*"[18] (Italics added.) Thus, the

---

[17]    Bunas does not contend on appeal that the trial court erred in refusing to continue the hearing so that he could be physically present in the courtroom rather than appearing by video.

[18]    Section 1001.36, subdivision (b)(3) provides in its entirety:

defendant carries a prima facie burden with respect to *both* eligibility *and* suitability, and there is nothing in the statute mandating the order in which the trial court is to consider these issues.

Further, there is nothing in the statute, or in any case law, that mandates that a trial court determine the defendant's *eligibility* if it determines that the defendant or offense is not *suitable* for diversion. Since, as Bunas acknowledges, a trial court may deny a motion for diversion on the basis of *either* suitability *or* eligibility, if the court determines that the defendant or offense is *not* suitable, it makes no difference whether the defendant is *eligible*. Given that the statute specifies that the "hearing on the prima facie showing shall be informal" (§ 1001.36, subd. (b)(3)) and does not mandate that a trial court make specific findings regarding eligibility, we see no reason why a trial court could not elect to decide the motion on suitability grounds, alone.[19]

---

> "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate."

[19] Bunas also suggests in his reply brief that the trial court was required to determine his eligibility for diversion prior to determining his suitability, based on the following language in our disposition in *Bunas I*:

> "The matter is remanded to the trial court with directions to conduct a mental health diversion eligibility hearing under section 1001.36. If the court determines that Bunas qualifies for diversion, then the court may grant diversion."

24

Finally, Bunas suggests that the trial court did not "consider[ ] evidence as to the eligibility factors," and he contends that, as a result, the trial court was in "no position to summarily conclude that the defendant's offenses rendered him "unsuitable" for diversion." We are not persuaded. The court stated that it *had* considered Bunas's motion as well as all of the supporting documents. Thus, the record supports the conclusion that the trial court considered all of the evidence that Bunas presented with his motion, including that which he contends demonstrated his eligibility for diversion.

In sum, we conclude that Bunas is not entitled to reversal on the ground that the trial court failed to hold an eligibility hearing on his motion for diversion.

> b. *The trial court did not err in relying solely on the circumstances of the charged offenses to deny the motion for diversion*

Bunas also contends that "[t]he trial court's statement that even if [he] was eligible under the statute, it would deny diversion based solely 'on the offense itself' (5RT 808) constitutes an abuse of discretion." Specifically, Bunas notes that section 1001.36, subdivision (b)(2) specifies a list of offenses that render a defendant statutorily ineligible for diversion, and he argues,

---

In remanding for a "mental health diversion eligibility hearing," we did not intend to say that the court was required to determine Bunas's "eligibility" under the statute. Rather, our intention was to direct the court to determine whether mental health diversion was appropriate in this case. The hearing that the court held comports with our remand in that respect. Our disposition did not inject additional requirements for the trial court to follow in determining diversion beyond those found in the statute. For the reasons stated in the text, we conclude that the trial court complied with the statutory requirements.

25

"None of these enumerated offenses were charged in this case."[20]  Bunas

reasons, "Given this specific list of ineligible offenses, it follows that a motion

for diversion should not be denied based solely on an offense which is not

statutorily ineligible."  (Underscore omitted.)

The trial court did not deny Bunas's motion because he was charged

with, or convicted of, offenses that rendered him statutorily ineligible or

unsuitable for diversion.  Rather, it was *the circumstances* of Bunas's

commission of the charged offenses in this case that, in the court's view,

rendered him unsuitable for diversion.  The court noted that the

circumstances of the charged offenses included, "an unprovoked assault, on

one victim, and a later attack on another victim with first a flashlight and

then a machete where he splits open her head, again, unprovoked,

threatening her all the while to kill her for ruining his life, and all in front of

---

[20]     Section 1001.36, subdivision (b)(2) provides:

"(2) A defendant may not be placed into a diversion
program, pursuant to this section, for the following current
charged offenses:

"(A) Murder or voluntary manslaughter.
"(B) An offense for which a person, if convicted, would be
required to register pursuant to Section 290, except for a
violation of Section 314.
"(C) Rape.
"(D) Lewd or lascivious act on a child under 14 years of
age.
"(E) Assault with intent to commit rape, sodomy, or oral
copulation, in violation of Section 220.
"(F) Commission of rape or sexual penetration in concert
with another person, in violation of Section 264.1.
"(G) Continuous sexual abuse of a child, in violation of
Section 288.5.
"(H) A violation of subdivision (b) or (c) of Section
11418."

her children who are pleading for the man, the defendant, not to kill their mother . . . ."  It is clear from the trial court's ruling that it was the *circumstances* of the charged offenses, rather than Bunas's commission of certain specified offenses, that led the trial court to deny his motion for diversion.

Further, the fact that the Legislature enumerated a list of offenses that render a defendant ineligible *as a matter of law* for mental health diversion (§ 1001.36, subd. (b)(2)) does not demonstrate that the Legislature intended to preclude a trial court from relying solely on the *circumstances* of an offense or offenses in determining either eligibility or suitability for diversion. Section 1001.36 specifies that the trial court may consider the "the defendant's violence and criminal history, *the current charged offense*, and any other factors that the court deems appropriate," in determining eligibility.  (§ 1001.36, subd. (b)(1)(F), italics added).  While the statute does not specify the factors that a trial court may consider in determining *suitability* (see § 1001.36, subd. (b)(3)), it permits the court to determine whether a defendant has made "a prima facie showing . . . that the defendant *and the offense* are suitable for diversion," (italics added) thereby evincing the Legislature's intent that a trial court be permitted to rely on a consideration of the circumstances of the charged offense in determining suitability. Finally, there is nothing in section 1001.36, with respect to either eligibility or suitability, that precludes a trial court from relying primarily, or even entirely, on the circumstances of the charged offense or offenses in denying a motion for diversion.

Accordingly, we reject Bunas's contention that the trial court erred in denying his motion for diversion "based solely on the offense."

27

c. *The trial court did not err in denying the motion for diversion without allowing an evidentiary hearing*

Bunas claims that the trial court abused its discretion in denying the motion for diversion without allowing an evidentiary hearing. As an initial matter, Bunas contends that the trial court understood defense counsel's request to continue the matter to allow Bunas to be present in person (rather than by videoconference) to be an "implicit request for an evidentiary hearing." (Underscore omitted.) In support of this argument, Bunas notes that, in denying counsel's request for a continuance, the trial court stated the following:

> "If the court was going to hold a hearing[,] I agree with you. I would think that it would be in his best interest if he wanted to be here physically for the hearing, and you would then be physically available in the courtroom *with him with your witnesses*. But the court is not going to hold a hearing. I am denying the motion based on the moving papers." (Boldface omitted.)

We agree with Bunas that the trial court's references in the above quotation to "a hearing," should be understood to mean "an evidentiary hearing," particularly in light of the court's reference to "witnesses." Thus, we agree with Bunas that the trial court understood defense counsel's request for a continuance to be "an implicit request for an evidentiary hearing." (Underscore omitted.) However, for the reasons discussed below, we reject Bunas's contention that the trial court abused its discretion in denying this request.[21]

---

[21] As noted in footnote 7, *ante*, while this appeal was pending, Bunas filed a separate petition for habeas corpus. In his petition, Bunas claims that, "in the event that this court holds, in the direct appeal, that defense counsel's request for a continuance did not constitute a request for an evidentiary hearing," (underscore omitted) and that Bunas therefore forfeited any right to

28

First, while Bunas contends that "no published case has directly addressed whether a trial court is required to hold an evidentiary hearing in a mental health diversion proceeding *upon request*," (italics added) it is clear that section 1001.36, subdivision (b)(3) authorizes a trial court to deny a motion for diversion *without* holding an evidentiary hearing if the court determines that a defendant has failed to make a prima facie showing in support of diversion. The statute expressly authorizes a trial court to "summarily deny the request for diversion," if the defendant fails to carry his burden of making a prima facie showing in support of diversion at a hearing that "*shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel.*" (§ 1001.36, subd. (b)(3), italics added.) Thus, the trial court was *not* required to hold an evidentiary hearing merely upon defense counsel's implied request for such a hearing.

Nor do we agree with Bunas's argument that *People v. McCallum* (2020) 55 Cal.App.5th 202 (*McCallum*) "is analogous and strongly supports a finding that the court abused its discretion by refusing to allow an evidentiary hearing." In *McCallum*, the Court of Appeal concluded that a trial court had abused its discretion in denying a recommendation from the Secretary of the Department of Corrections and Rehabilitation that the defendant's sentence be recalled under former section 1170, subdivision (d)(1), "without first allowing [the defendant] to *submit information* necessary for the court to exercise its discretion whether to follow the recommendation." (*McCallum, supra*, at p. 216, italics added.) The *McCallum* court explained

an evidentiary hearing, "then that forfeiture is the result of ineffective assistance of counsel." We agree with Bunas that his counsel impliedly requested a continuance so that the court might hold an evidentiary hearing and we do not base our rejection of Bunas's claim on forfeiture.

Accordingly, as we explain in a separate order filed today, we deny Bunas's petition for habeas corpus on the ground that it is moot.

29

that after the trial court received the Secretary's recommendation, defense counsel filed a motion for " 'a case management conference with the [c]ourt and [d]istrict [a]ttorney to discuss [the Department's] recommendation and, if necessary, set a briefing and hearing schedule for the matter.' " (*Id.* at p. 209.)  The *McCallum* court interpreted the "request as one seeking an opportunity to submit additional information relevant to the Secretary's recommendation and briefing addressing why the trial court should follow the recommendation." (*Id.* at p. 216, fn. 13.)  The trial court never held a case management conference and declined to exercise its discretion to recall the defendant's sentence in a minute order.  (*Id.* at p. 209.)  Neither the defendant nor his counsel was present in court at the time the court entered the minute order.  (*Ibid.*)  While the *McCallum* court concluded that the defendant was "[*n*]*ot* [e]ntitled to a [h]earing [u]nder [s]ection 1170, [s]ubdivision (d)(1)," (*id.* at p. 211, italics altered) to consider the Secretary's recommendation, the court concluded that the trial court *had* abused its discretion by "simply . . . ignor[ing] [the defendant's] request to *provide input* on the Secretary's recommendation." (*Id.* at p. 216, italics added.)

Unlike in *McCallum*, in this case, the trial court *permitted* Bunas to file a brief and supporting documentation, including a psychological report. Further, the trial court held a hearing on Bunas's motion for diversion at which the court stated that it had read and considered Bunas's written submissions.  In addition, Bunas's counsel and Bunas were both present by way of videoconference at the hearing on the motion for diversion.  Thus, unlike in *McCallum*, the trial court permitted Bunas to "provide input" (*McCallum*, 55 Cal.App.5th at p. 216) and "submit information," (*ibid.*) on his request for diversion.

Further, the *McCallum* court concluded that the defendant was *not* entitled to a hearing under the statutory scheme at issue in that case (*McCallum, supra*, 55 Cal.App.5th at p. 211) and the *McCallum* court had no occasion to consider the circumstances under which a defendant might be entitled to an evidentiary hearing to consider a request for mental health diversion under section 1001.36. For all of these reasons, *McCallum* does not support Bunas's contention that the trial court erred in denying his motion without holding an evidentiary hearing.

Finally, we reject Bunas's contention that the trial court abused its discretion in denying an evidentiary hearing because, according to Bunas, the court purportedly "deprived [him] of his right to present evidence regarding the nature and extent of his mental health issues, how they may have contributed to the offense, [Bunas's] ability and willingness to comply with any treatment recommended by the court or medical providers, and so on." As described above, section 1001.36, subdivision (b)(3) clearly empowers the trial court to adjudicate a motion for diversion *without* an evidentiary hearing if the trial court determines that a defendant has failed to make a prima facie showing that he or she meets all of the threshold eligibility requirements and that the defendant and the offense are suitable for diversion.[22]

Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion for diversion without allowing an evidentiary hearing.

---

[22] Apart from the arguments addressed in the text, Bunas does not argue that the trial court abused its discretion in determining that he failed to carry his prima facie burden of demonstrating his eligibility and suitability for mental health diversion.

31

d. *The trial court erred in relying on general objectives of sentencing in denying Bunas's motion for diversion, but the error does not warrant reversal*

Although not raised as a separately captioned argument,[23] we agree with Bunas that the trial court erred in relying on general objectives of sentencing in denying Bunas's motion for diversion.

As noted in part III.A.3.c, *ante*, during one portion of the hearing on the motion for diversion, the trial court stated:

> "The general objectives of sentencing[ ] stated in California Rule[s] of Court[, rule] 4.410 reflect the various and sometimes conflicting goals of our criminal justice system. Although mental health diversion might satisfy the objectives of encouraging the defendant to lead a law-abiding life and deterring him from future offenses, an assault, an unprovoked assault, on one victim, and a later attack on another victim with first a flashlight and then a machete where he splits open her head, again, unprovoked, threatening her all the while to kill her for ruining his life, and all in front of her children who are pleading for the man, the defendant, not to kill their mother, involves a use of force and fear on members of the public that justifies placing the goals of punishment and [deterrence] of others by demonstrating the consequences of such criminal behavior above the needs of the defendant's, and for those reasons the defendant's motion for mental health diversion is denied."

In our prior opinion in *Bunas I*, we explained that we were applying the remedy employed by the Court of Appeal in *People v. Frahs* (2018) 27 Cal.App.5th 784, 796, namely "a conditional reversal of both the judgment *and the convictions underlying the judgmen*t, and a remand to permit the trial court to grant diversion and thereby *avoid* the imposition of a sentence." (Italics altered; see also *Frahs, supra*, 9 Cal.5th at p. 639 ["by conditionally

---

[23]    (Cal. Rules of Court, rules 8.204(a)(1)(B), 8.360; see fn. 4, *ante*.)

reversing defendant's convictions and sentence for an eligibility hearing under section 1001.36, the case would be restored to its procedural posture *before* the jury verdict for purposes of evaluating defendant's eligibility for pretrial mental health diversion" (italics added)].) We specifically noted that the trial court must " 'treat the matter as though [Bunas] had moved for pretrial diversion *after the charges had been filed, but prior to their adjudication.*' " (*Bunas I,* italics added.) Further, our disposition expressly stated that the "the convictions are conditionally reversed," and we explained in our opinion, "[i]n using the term 'convictions' . . . we intend to refer to Bunas's plea of guilty to the underlying charges, as well as his admissions to the enhancement allegations and the strike and serious felony allegations." (*Ibid.*)

In short, our prior opinion made clear that the trial court was required to adjudicate Bunas's motion for diversion in light of our conditional reversal of his conviction and plea of guilty. Until the court denied Bunas's motion for diversion, his guilty plea remained reversed and the "objectives of sentencing[ ]" had no application to Bunas.[24] Thus, it was not proper for the trial court to rely on the objectives of sentencing in denying Bunas's motion for diversion.

---

[24] We express no opinion with respect to whether a motion for diversion may be properly filed *after* a jury's verdict or a plea of guilty in a case, unlike this one, in which the mental health diversion statute became effective prior to such verdict or guilty plea. The Supreme Court is currently considering, "What is the latest point at which a defendant's request for mental health diversion is timely under Penal Code section 1001.36?" (*People v. Braden* (2021) 63 Cal.App.5th 330, review granted and limiting issue to be briefed and argued July 14, 2021, S268925.) Nor do we address whether, in such a case, it would be appropriate for a trial court to consider the objectives of sentencing in ruling on the motion for diversion.

Nevertheless, we conclude that the trial court's error does not warrant reversal. To begin with, " 'It is appellant's burden on appeal to establish an abuse of discretion *and prejudice.*' " (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213, italics added [discussing an appellant's burden in seeking reversal of trial court's denial of mental health diversion].) "This means reversal is appropriate 'only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*People v. Banner* (2022) 77 Cal.App.5th 226, 235 [discussing standard of prejudice for claims of error pertaining to mental health diversion].) Bunas fails to present any argument that the trial court's reference to sentencing objectives constituted prejudicial error.[25]

In any event, we conclude that the trial court's reference to sentencing objectives in denying Bunas's motion was harmless. To begin with, for the reasons stated in part III.A.4.b, *ante*, the trial court was free to rely on the *evidence* pertaining to the circumstances of the charged offenses in determining Bunas's eligibility and suitability for mental health diversion. As described in part III.A.3, *ante*, that evidence undisputedly demonstrated that Bunas committed two different violent attacks on his girlfriend. During the attacks, he used weapons and threatened to kill her. Moreover, the undisputed evidence established that Bunas had punched another individual in the face earlier that day. At the March 16, 2021 hearing, the trial court referenced this evidence of Bunas's violent conduct in denying his motion for mental health diversion. In addition, the record unequivocally establishes that, at the time Bunas committed these offenses, he was on probation in SCD264352 for a strike offense (§ 246) of shooting at an inhabited vehicle.

[25] Bunas's brief does not contain a prejudice argument with respect to any of the arguments raised.

The trial court was also presented with evidence that Bunas had also committed two separate violent assaults with weapons with respect to the dismissed offenses in SCD264352.

In addition to the evidence of Bunas's violent history, the trial court's summary disposition of his motion for mental health diversion also supports the conclusion that the court's reference to the objectives of sentencing did not constitute reversible error. (See § 1001.36, subd. (b)(3) [authorizing trial court to "summarily deny the request for diversion"].) At the March 16 hearing, the court stated that, "even if the mental illness was a significant factor in the charged offense, and I am not indicating it was, I'm not making a finding that it was, especially given the other motives that he had in this case, but assuming that even if the court found all of the requirements, including that the mental illness was a significant factor in the charged crimes, this court would nonetheless exercise its discretion to conclude that the charged offenses, though not statutorily disqualified, are not suitable for diversion." This statement supports the conclusion that the court did not intend to grant Bunas diversion, irrespective of any improper comments pertaining to sentencing objectives that the court made during the hearing.

In sum, given Bunas's recent violent criminal history, as well as the trial court's ruling at the hearing, it is not reasonably probable that Bunas would have obtained a more favorable result if the court had not erroneously referenced the objectives of sentencing in denying his motion for mental health diversion. Accordingly, we conclude that, while the trial court erred in relying on general objectives of sentencing in denying Bunas's motion for diversion, the error does not warrant reversal.

B.  *The trial court erred in failing to resentence Bunas*

Bunas claims that the trial court failed to resentence him in accordance with our opinion in *Bunas I*.  The People concede the error.  We agree that the trial court erred in failing to resentence Bunas in accordance with *Bunas I*.

In *Bunas I*, we noted that Bunas argued:  "[I]n the event that the trial court does not grant him mental health diversion . . . the trial court should be ordered to resentence him.  Bunas contends that a full resentencing is required given the lack of clarity with respect to the court's intended judgment."  (*Bunas I*.)

We agreed with Bunas's contention, reasoning:

> "At the November 2018 hearing, the trial court imposed a sentence in SCD272661 that was four months longer than the sentence that it imposed in this case in June 2018. However, given that the court imposed this sentence while under a misimpression about a material fact concerning Bunas's aggregate sentence, we cannot be certain as to the aggregate sentence that the court intended to impose in both cases.  If we were to restrict the trial court on remand to clarifying whether it intended that the sentence in the probation case SCD264352 run concurrently with, or instead, consecutively to the sentence imposed in SCD272661,[26] we would be limiting the court to imposing an aggregate sentence that might not comport with the trial court's intended aggregate sentence in the two cases. We therefore conclude that the proper remedy is to allow for a full resentencing at which time the trial court may consider the full range of sentencing options available to it in both cases."  (*Bunas I*.)

---

26  We rejected the People's suggestion for such a remand order in *Bunas I*. Instead, we directed the court to conduct a full resentencing hearing in both SCD272661 and SCD264352.

On remand from *Bunas I*, the trial court failed to resentence Bunas. Accordingly, we conclude that the matter must again be remanded to the trial court with directions to conduct a full resentencing in SCD272661 and SCD264352 in accordance with our directions in *Bunas I*.

IV.

DISPOSITION

The trial court's March 16, 2021 order denying Bunas's motion for diversion is affirmed. The court's March 16, 2021 order is reversed insofar as the trial court failed to resentence Bunas in accordance with *Bunas I*. The matter is remanded to the trial court with directions to conduct a full resentencing in SCD272661 and SCD264352. At the conclusion of resentencing, the court shall order the preparation of a corrected abstract of judgment and shall forward the corrected abstract to the Department of Corrections and Rehabilitation.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.